**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

_____

| | |
|---|---|
| IN RE: SMITTY'S/CAM2 303 TRACTOR HYDRAULIC FLUID MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | MDL No. 2936<br><br>Master Case No. 4:20-MD-02936-SRB<br><br>Related to Case No. 21-CV-00071-SRB |

_____

| | | |
|---|---|---|
| NATIONWIDE AGRIBUSINESS INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SMITTY'S SUPPLY, INC.<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:21-cv-00071-SRB |

## ORDER

Before the Court is Plaintiff Nationwide Agribusiness Insurance Company's ("Nationwide") Motion for Summary Judgment (Doc. #135) and Defendant Smitty's Supply, Inc.'s ("Smitty's") Motion for Partial Summary Judgment (Doc. #133). For the reasons discussed below, both motions are GRANTED IN PART and DENIED IN PART.

## TABLE OF CONTENTS

I.    BACKGROUND .................................................................................................. 3

    A.   The Policies ............................................................................................. 3

    B.   The *Hornbeck* Action and Settlement ..................................................... 4

    C.   The Instant Action .................................................................................. 6

II.   LEGAL STANDARD ......................................................................................... 7

III.  DISCUSSION .................................................................................................... 7

A.     Nationwide's Claim for Declaratory Judgment ........................................................ 7

B.     Smitty's Counterclaim Count I, Breach of Contract ................................................ 30

C.     Smitty's Counterclaims Count II and III ................................................................ 31

IV.     CONCLUSION ............................................................................................................ 33

## I.    BACKGROUND

This case arises out of an insurance coverage dispute between Nationwide and Smitty's. For the purpose of resolving the pending motions, the following facts are uncontroverted or deemed uncontroverted by the Court.[1]  Additional facts relevant to the parties' arguments are set forth in Section III.

### A.    The Policies

Nationwide issued to Smitty's six primary commercial general liability insurance policies effective consecutively from April 30, 2014, to April 30, 2020 ("the Primary Policies"). Nationwide also issued to Smitty's four umbrella commercial general liability insurance policies effective consecutively from April 30, 2014, to April 30, 2018 ("the Umbrella Policies"). Generally, the Primary and Umbrella Policies (collectively, "the Policies") provide that Nationwide will indemnify Smitty's for "those sums the insured becomes legally obligated to pay as damages" because of "property damage" caused by an "occurrence," as those terms are defined by the Policies.  (Doc. #138-1, p. 16.)[2]  The Policies define "property damage" as:

  a.  Physical injury to tangible property, including all resulting loss of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

(Doc. #138-1, p. 30.)  The Policies cover property damages if:

---

[1] The relevant facts discussed below are taken from the record, including the parties' briefs and exhibits.  The parties' respective motions raise similar facts and arguments.  The Court has reviewed all briefs and exhibits pertaining to both motions for summary judgment, and the rulings herein dispose of both motions.  To provide context and/or where applicable, this Order includes facts and arguments from both parties' briefs.  Only those facts necessary to resolve the pending motions are discussed below and are simplified to the extent possible.

[2] All page numbers refer to the pagination automatically generated by CM/ECF.  Additionally, for the sake of brevity, the Court will cite to only one of the policies at issue when quoting the Policies.  The Court will note if and where the Policies' language differs.

(1) The . . . 'property damage' is caused by an 'occurrence' . . . ;

(2) The . . . 'property damage' occurs during the policy period; and

(3) Prior to the policy, no insured . . . know that the . . . 'property damage' had occurred, in whole or in part.  If such a[n] [insured] [knew], prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

(Doc. #138-1, p. 16.)  The Primary Policies limit the amount paid for "property damage" to $1,000,000 for "any one occurrence[.]" (Doc. #138-1, pp. 14, 25.)

### B.    The *Hornbeck* Action and Settlement

On May 25, 2018, a class action lawsuit entitled *Shawn Hornbeck et. al. v. Tractor Supply Company et. al.*, No. 4:18-cv-00523-NKL ("the *Hornbeck* Action") was filed in the Circuit Court of Cass County, Missouri.  The *Hornbeck* Action was subsequently removed to the United States District Court for the Western District of Missouri.  The *Hornbeck* Action's class action complaint alleged, in part, that some of Smitty's tractor hydraulic fluid products ("the THF Products") increased wear and tear to the *Hornbeck* Plaintiff's equipment.

Smitty's sought indemnity in the *Hornbeck* Action from Nationwide under the Primary and Umbrella Policies.  In response, Nationwide issued letters to Smitty's in which Nationwide explained that it retained counsel to defend Smitty's in the *Hornbeck* Action, but reserved the rights to "[d]eny the claim and or coverage" and "[u]se action to determine the rights and obligations of the parties."  (Doc. #138-12, p. 4; Doc. #138-13, p. 4.)  Nationwide also stated that "[f]rom a review of the complaint, it does not appear as if the plaintiffs are seeking sums payable as damages because of 'bodily injury' or 'property damage' caused by an 'occurrence,' as those terms are defined by the policy."  (Doc. #138-12, p. 4; Doc. #138-13, p. 4.)  Nationwide offered no explanation or analysis to support its coverage conclusions.

The *Hornbeck* Plaintiffs then filed a Revised First Amended Class Action Complaint, which contained multiple paragraphs alleging property damages caused by the use of the THF Products. On January 4, 2019, Nationwide issue a supplemental letter to Smitty's, which repeated its prior assertion that the *Hornbeck* Plaintiffs were not seeking covered damages under the Primary and Umbrella Policies. Nationwide raised two new exclusions it believed were applicable to several of the *Hornbeck* Plaintiffs' claims. By January 2019, another Smitty's insurer, National Union Fire Insurance Company ("National Union") agreed to participate in Smitty's defense in the *Hornbeck* Action.

The *Hornbeck* Plaintiffs, Smitty's, Nationwide, and National Union all participated in settlement negotiations. On or about July 17, 2019, the *Hornbeck* Plaintiffs and Smitty's (through counsel retained by Nationwide and National Union) executed a Key Provisions agreement, confirming the terms of a potential settlement and including a Class Settlement Fund of $1,700,000, in part, to compensate the Settlement Class Members for "identifiable repairs/parts bills and/or damage to equipment" by the *Hornbeck* Class. (Doc. #138-17, p. 5.)

The parties exchanged drafts of a Settlement Agreement which was shared with Nationwide. Nationwide participated in Settlement Agreement negotiations, agreed with its terms, and did not otherwise object to it. Accordingly, the *Hornbeck* Plaintiffs, Smitty's (including counsel from Nationwide and National Union), and Tractor Supply (another named defendant in the *Hornbeck* Action) executed the Settlement Agreement, creating a Class Settlement Fund of $1,700,000 due to property damage caused by Smitty's 303 THF product. The Settlement Agreement was preliminarily approved by United States District Judge Nanette K. Laughrey on August 19, 2019. The claims period was established to be from May 25, 2013 to

5

March 27, 2020. Nationwide agreed to pay $80,000 of the Settlement Agreement, National Union agreed to pay $20,000, leaving $1,600,000 of the Class Settlement Fund to be paid.

On September 30, 2019, Nationwide sent Smitty's a letter disputing coverage and announcing that it did not have sufficient information to evaluate the reasonableness of the settlement or whether the settlement was covered by the Policies. On February 25, 2020, the *Hornbeck* Plaintiffs filed a Motion for Final Approval of Proposed Class Action Settlement. The motion was granted, and the *Hornbeck* Action was dismissed with prejudice. Nationwide paid $80,000 of the Class Settlement Fund, National Union paid $20,000, and Smitty's paid the remaining $1,600,000.

### C. The Instant Action

On October 22, 2020, Nationwide filed this declaratory judgment action in the United States District Court for the Eastern District of Louisiana, seeking a determination as to what portion, if any, it is required to indemnify Smitty's for the Settlement Agreement in the *Hornbeck* Action. The United States Judicial Panel on Multidistrict Litigation transferred this declaratory judgment action to the undersigned for inclusion in the coordinated and consolidated pretrial proceedings of *In re: Smitty's/CAM2 303 Tractor Hydraulic Fluid Marketing, Sales Practices and Products Liability Litigation*, MDL No. 20-md-02936-SRB. After Nationwide filed a Third Amended Complaint, Smitty's filed its First Amended Counterclaim ("FAC").

In the FAC, Smitty's asserts the following counterclaims: Breach of Contract (Count I); Common Law Bad Faith under Missouri and/or Louisiana law (Count II); and Statutory Bad Faith under Mo. Rev. Stat. §§ 375.296 and 375.420, or, alternatively, La. Stat. Ann. § 22:1973, or, alternatively, La. Stat. Ann. § 22:1892 (Count III). Nationwide moved to dismiss the FAC, which the Court denied.

6

The parties now each move for summary judgment. Nationwide moves for summary judgment on its declaratory judgment claim and Smitty's Counts I–III. Smitty's moves for summary judgment on Nationwide's declaratory judgment claim and its breach of contract claim (Count I). Each party opposes the other's motion. The parties' arguments are discussed below.

## II.    LEGAL STANDARD

Under Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of identifying "the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up). If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* (quotation marks omitted).

## III.    DISCUSSION

The Court will address the parties' arguments as follows: (1) Nationwide's claim for declaratory judgment; (2) Smitty's Counterclaim Count I, alleging breach of contract; and (3) Smitty's Counterclaims Counts II and III, alleging bad faith.

### A.    Nationwide's Claim for Declaratory Judgment

Both parties move for summary judgment on Count I, Nationwide's claim for declaratory judgment, disputing whether coverage exists under the terms of the Primary and Umbrella Policies. The Court will address the parties' arguments as follows: (1) coverage of the

Settlement Funds; (2) coverage of attorney's fees and expenses; (3) coverage of incentive awards; and (4) policy exclusions. However, the Court must first determine the applicable law.

### 1. Law Applicable to Contract Claims

The parties agree, and the Court finds, that state substantive law controls both Nationwide's declaratory judgment claim and Smitty's counterclaims. "For the purposes of choice of law analysis, an MDL court is not a typical federal court sitting in diversity." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 999 F.3d 534, 538 (8th Cir. 2021). For state law claims, "the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (citation omitted). As this case was transferred from Louisiana, the Court will apply Louisiana's choice-of-law rules.

"In an action involving the interpretation of insurance policies issued in Louisiana, Louisiana's substantive law controls." *Methodist Health Sys. Foundation, Inc. v. Hartford Fire Ins. Co.*, 834 F.Supp.2d 493, 495 (E.D. La. 2011) (citing *In Re: Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). Nationwide and Smitty's negotiated and executed the Primary and Umbrella Policies in Louisiana, thus Louisiana substantive law governs the interpretation of the policies.

"The interpretation of an insurance contract presents a question of law, rather than of fact, and therefore is an appropriate matter for determination by summary judgment." *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 878 (5th Cir. 2009) (citing *Bonin v. Westport Ins. Co.*, 930 So. 2d 906, 910 (La. 2006)). "Under Louisiana law, interpretation of an insurance policy is subject to the general rules of contract interpretation which requires judicial determination of the common intent of the parties to the contract." *Thermo Terratech v. GDC Enviro-Solutions, Inc.*,

8

265 F.3d 329, 334 (5th Cir. 2001) (citing *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994)). "The intent of the parties, 'as reflected by the words in the policy[,] determine the extent of coverage.'" *Id.* (quoting *Louisiana Ins. Guar.*, 630 So. 2d at 763) (alteration in original). "We construe the words of an insurance policy by applying their 'general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning.'" *Id.* (quoting *Louisiana Ins. Guar.*, 630 So. 2d at 763) (alteration in original).

"Liability insurance policies should be interpreted to effect, rather than to deny coverage." *Stewart Interior Contractors, L.L.C. v. Metalpro Indus., L.L.C.*, 969 So. 2d 653, 659 (La. App. 2007) (citing *Yount v. Maisano*, 627 So. 2d 148, 151 (La. 1993)). "When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms." *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000) (citation omitted). "A party seeking to recover under an insurance contract must prove every fact necessary to show that the claim is within the coverage provided by the policy." *Marshall v. MOL (Am.), Inc.*, No. CV 08-0230, 2008 WL 11387025, at *2 (W.D. La. Aug. 22, 2008) (citing *Fielding v. Casualty Reciprocal Exchange*, 331 So. 2d 186, 188 (La. App. 1976)). "On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." *Id.* (citations omitted). "Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured[.]" *Id.* (citations omitted).

"[I]n assessing the duty to indemnify" a Court should "apply the Policy to the actual evidence" establishing "the underlying liability . . . together with any evidence introduced in the coverage case." *Martco Ltd.*, 588 F.3d at 877; s*ee LCS Corrections Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015) (comparing the duty to defend, which is evaluated "solely

on the terms of the insurance policy and the allegations in pleadings[,]" with the duty to indemnify, which is evaluated "after the parties have developed the facts that establish liability in the underlying lawsuit") (citing *Yount*, 627 So. 2d at 153).[3] Rather than relying on the pleadings, "the Court must look to the 'terms and circumstances' of the underlying settlement, including relevant affidavits, depositions, and documentary evidence." *Bank One, N.A. v. Echo Acceptance Corp.*, No. 04-CV-318, 2008 WL 4449389, at *14 (S.D. Ohio Sept. 30, 2008), aff'd, 380 F.App'x 513 (6th Cir. 2010) (quoting *M/G Transports Svcs. v. Water Quality Ins.*, 234 F.3d 974, 978 (6th Cir. 2000)).

## 2. Coverage of the Settlement Funds

Here, the parties dispute whether Nationwide is required by the Policies to indemnify Smitty's for the *Hornbeck* Settlement. Under Louisiana law, "[a] summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, exists under which coverage could be afforded." *Stewart Interior Contractors*, 969 So. 2d at 658 (citation omitted). The parties put forth various arguments regarding whether the Settlement Funds are covered under the Policies, which the Court addresses below.

---

[3] Nationwide argues that the Settlement Agreement's language is not material because it "was clearly designed to attempt to manufacture insurance coverage." (Doc. #155, p. 36.) Nationwide urges the Court to consider the underlying allegations contained in the complaints of the *Hornbeck* action. However, as Louisiana law directs the Court to look beyond the pleadings and consider the facts establishing liability, Nationwide's argument is rejected.

10

### a) "Property Damage"

The parties dispute whether the Settlement Funds compensate for "property damage" within the meaning of the Policies.[4]  The Policies require Nationwide to pay "those sums [Smitty's] becomes legally obligated to pay as damages" because of "property damage." (Doc. #138-1, p. 16.)  The Policies define "property damage" as either "[p]hysical injury to tangible property, including all resulting loss of use" or "[l]oss of use of tangible property that is not physically injured[.]"  (Doc. #138-1, p. 30.)

The *Hornbeck* Settlement distributed funds to qualifying class members in two relief funds: (1) the Automatic Relief Fund and (2) the Repairs/Parts/Specific Damage Claim Fund Relief ("the Damage Fund").  Smitty's argues that both funds are covered by the Policies.  Each relief fund is addressed separately below.

### (1) The Automatic Relief Fund

Smitty's argues that the Automatic Relief Fund compensates for "property damage" within the meaning of the Policies because it distributed $130,082 to class members "for property damage generally sustained."  (Doc. #138-18, p. 12.)  Nationwide disagrees, arguing "[t]he monies paid under the Automatic Fund clearly do not fall within the definition of 'property damage,' but instead were reimbursement for the *Hornbeck* class members' purchase of the 303 THF Products, which is not covered by the policies."[5]  (Doc. #155, p. 38.)

"We construe the words of an insurance policy by applying their 'general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning.'"  *Thermo Terratech*,

---

[4] Nationwide also argues that it is obligated to indemnify Smitty's for damages due to "bodily injury" or "personal and advertising injury."  (Doc. #136, p. 27.)  Smitty's does not seek indemnification on these grounds.  (Doc. #153, pp. 49–50.)  Therefore, the Court grants summary judgment in favor of Nationwide on the limited issue of whether the Policies cover the Settlement Agreement under the "bodily injury" or "personal and advertising injury" provisions.

[5] Nationwide also argues that the Policies' exclusion "k. Damage to Your Product" specifically excludes the Automatic Relief Fund.  This argument is discussed further below.

265 F.3d at 334 (quoting *Louisiana Ins. Guar.*, 630 So. 2d at 763) (alteration in original).  The Court, looking to the Settlement Agreement and the facts as established, finds that Smitty's has satisfied its burden of showing the Automatic Relief Fund is covered by the policies.  The Automatic Relief Fund provides "automatic damages" to class members "calculated as a percentage of the purchase price," for the purpose of "compensat[ing] for property damage generally sustained."  (Doc. #138-18, p. 12.)

Nationwide has failed to show a genuine dispute of material fact.  Nationwide argues that the Automatic Relief Fund compensates for purchase price damages because it distributes the funds calculated as a percentage of the purchase price of the THF Products.  However, Nationwide produces no Louisiana case law stating that the method of distribution of damages controls their basis and/or purpose.  Stuart Shkolnick ("Shkolnick"), the Nationwide employee handling this claim, testified that he interpreted the Automatic Relief Fund as "damages involv[ing] the cost of the insured's product[,]" or "go[ing] to purchase price," while the Damage Fund "goes to identifiable repairs[.]"  (Doc. #153-3, p. 5.)

Shkolnick's testimony is undermined by the fact that Nationwide was involved in the drafting of the Settlement Agreement and did not object to its terms.  On July 17, 2019, Smitty's and the *Hornbeck* Plaintiffs entered into a preliminary agreement, and agreed an Automatic Relief Fund would be established "to compensate for the property damages generally sustained." (Doc. #138-17, p. 6.)  Nationwide received a draft of this document and did not object to the terms therein.  (Doc. #134-1, pp. 13–14); *see Certain Underwriters at Lloyd's, London v. Oryx Energy Co.*, 203 F.3d 898, 901 (5th Cir. 2000) (holding that, where a party who "participated fully in the settlement," it is appropriate to consider only the language of the settlement agreement itself, and not other factors like the pleadings, allegations, etc.).  Although Nationwide

discusses the *Hornbeck* Plaintiffs' allegations at length, it fails to produce further facts supporting its argument. *See Illinois Union Ins. Co. v. Louisiana Health Serv. & Indemnity Co.*, 257 F.Supp.3d 763, 790 (E.D. La. 2017) (holding genuine issues of material fact exist regarding whether settlement amounts were covered where the insurance company produced facts in the record indicating the amounts were excluded). Nationwide has not shown it is entitled to summary judgment because it has not shown there is "no reasonable interpretation of the policy . . . exists under which coverage could be afforded." *Stewart Interior Contractors*, 969 So. 2d at 658 (citation omitted).

The Court further finds that Smitty's has shown there is no genuine dispute of material fact as to whether the Automatic Relief Fund is covered by the Policies. The Settlement Agreement states:

> Plaintiffs allege that this monetary relief is required because property damage has been suffered by each and every purchaser of the Super S Super Trac 303 THF Product. That damage has occurred to the equipment in which the Super S Super Trac 303 THF was used even if the owner has not yet had to pay for repair parts or service.

(Doc. #138-18, p. 13.) This provision unambiguously states that the Automatic Relief Fund compensates for class members' property damage. *See also Scottsdale Ins. Co. v. TL Spreader, LLC*, No. 6:15CV2664, 2017 WL 4779575, at *6 (W.D. La. Oct. 20, 2017) ("[T]he type or measure of damages is not dispositive of whether or not coverage is provided; rather, the pertinent inquiry is whether there was an occurrence which resulted in 'property damage' as defined in the policy."). Therefore, under Louisiana law, a grant of summary judgment would be inappropriate.

Accordingly, the Court finds that there is no genuine dispute of material fact in that the Automatic Relief Fund is compensating for "property damage" within the meaning of the Policies.[6]

### (2) The Damage Fund

Smitty's argues that the Damage Fund compensates for "property damage" within the meaning of the Policies because it distributed payment to class members for property damage within the meaning of the Policies. Nationwide appears to agree that the Damage Fund is covered.

The Damage Fund distributed $819,918 to class members "to pay claims submitted . . . for the costs of any equipment repairs, parts purchases, and/or specific damage to equipment that resulted from, in whole or in part, the use of [the THF Products] during the class period." (Doc. #138-18, p. 12.) This clearly falls within "property damage" as defined by the Policies because it is compensating for "[p]hysical injury to tangible property[.]" (Doc. #138-1, p. 30.) Because a reasonable interpretation of the Policies and Settlement Agreement shows the Damage Fund compensates for property damage, a grant of summary judgment in favor of Smitty's is inappropriate.

### b) "Occurrence"

Smitty's argues that the damages addressed by the *Hornbeck* Settlement were caused by an "occurrence" within the meaning of the Policies. Nationwide disagrees, arguing that the *Hornbeck* Plaintiffs' allegations must be considered, and that the *Hornbeck* Plaintiffs alleged

---

[6] Further, to the extent that the Automatic Fund also compensates for economic loss, the outcome would be the same. Louisiana courts have found that once property damages "trigger[] the initial grant of coverage under [a] CGL policy[,]" economic loss damages do not preclude summary judgment. *See Stewart Interior Contractors*, 969 So. 2d at 661–62; *see also Gibbs Constr., L.L.C. v. Nat'l Rice Mill, L.L.C.*, 238 So. 3d 1033, 1043 (La. App. 2018) (finding "that, in addition to economic losses, Rice Mill has sufficiently alleged property damage to the apartments, thereby triggering the initial grant of coverage," and reversing a grant of summary judgment).

"Smitty's acted intentionally" and engaged in "fraudulent and deceptive marketing and sales[.]" (Doc. #155, p. 42.)

As a threshold issue, the Court disagrees that the *Hornbeck* Plaintiff's allegations are dispositive here. The majority of cases Nationwide cites for this contention involve the duty to defend which, as discussed above, are analyzed according to allegations contained in a complaint. When evaluating the duty to indemnify, the Court should consider the facts as established at the time of the settlement. *See LCS Corrections*, 800 F.3d at 668 (evaluating the duty to indemnify according to "the facts that establish liability in the underlying lawsuit").[7]

The Policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. #138-1, p. 30.) An accident is commonly defined as "[a] unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated; any unwanted or harmful event occurring suddenly, as a collision, spill, fall, or the like, irrespective of cause or blame[.]" *Accident*, BLACK'S LAW DICTIONARY (11th ed. 2019).

The Court finds that Smitty's has satisfied its burden in showing that the Settlement Agreement falls within an "occurrence" as defined by the Policies, entitling Smitty's to summary judgment. Nationwide has not shown facts creating a genuine dispute of material fact as to whether Smitty's or consumers anticipated that the use of the THF Products would cause damage to equipment. Further, in its briefing, Nationwide does not reference the record, besides discussions of the *Hornbeck* Plaintiffs' complaint. For these reasons, the Court finds that the Settlement Agreement compensates for property damage caused by an "occurrence" as defined by the Policies.

---

[7] However, even if the *Hornbeck* Plaintiffs' allegations were material, the Court finds the outcome would be the same.

### c) Multiple Occurrences

The parties dispute whether the property damage suffered by the *Hornbeck* Plaintiffs is a single occurrence or multiple occurrences. Smitty's maintains that each instance of damage suffered by each individual Plaintiff is a separate occurrence. Nationwide argues that all damage should be considered one occurrence because "all claims stem from one proximate cause[.]" (Doc. #155, p. 49.)

"[I]n cases where different parties are damaged by a series of events, the damage to each party is a separate 'occurrence' for purposes of an insurance contract." *Liberty Mut. Ins. Co. v. Jotun Paints, Inc.*, 555 F.Supp.2d 686, 695 (E.D. La. 2008) (holding damages caused by a product constituted "one occurrence for each party injured") (citing *Lombard v. Sewerage & Water Board of New Orleans*, 284 So. 2d 905, 915–16 (La. 1973)). "[T]he relevant inquiry is not the cause of the damage but the effect on the injured parties." *Thebault v. Am. Home Assur. Co.*, 195 So. 3d 113, 117 (La. App. 2016) (holding that where "damages [were] caused by a series of events" there were multiple occurrences, but where one event from which all damage stems "constituted a single occurrence").

Applying Louisiana law, the Court finds that the damages suffered by the *Hornbeck* Plaintiffs constitute multiple occurrences. *See* (Doc. #138-18, p. 3.) Smitty's conduct that caused the damages, the marketing and sales of the THF Products over the course of six years, was not one event from which all property damages stemmed. *See Lombard*, 284 So. 2d at 915 ("As a rational matter, however, it can hardly be said that this construction project lasting more than one year is a single 'occurrence[.]'"). Louisiana directs the Court to consider each instance of damage suffered by the *Hornbeck* Plaintiffs as a separate occurrence. Therefore, the Court

finds that the property damage suffered by the *Hornbeck* Plaintiffs constitute multiple occurrences within the meaning of the Policies.[8]

### d) Policy Period

Nationwide argues that Smitty's has not satisfied is burden of showing coverage of the Settlement Agreement because it is undisputed that some *Hornbeck* Plaintiffs incurred damages before the Policies went into effect on April 30, 2014. Smitty's admits that some damage was incurred before the policy period. However, Smitty's argues that this is immaterial, as discussed below.

The Policies apply only to "'property damage' [that] occurs during the policy period." (Doc. #138-1, p. 30.) All Policies went into effect on April 30, 2014. However, the Settlement Agreement may include class members who suffered damages starting May 25, 2013, which is before the Policies went into effect.

In order to satisfy their burden of showing the Settlement Fund is covered by the Policies, "the time the injury occurred . . . is clearly an essential element of [Smitty's] threshold burden of proving that their claim falls within the basic coverage of the policy." *Succession of Coddington v. Time Ins. Co.*, 658 So. 2d 1326, 1334 (La. App. 1995) (citations omitted). In other words, only those damages incurred during the policy period are covered and Smitty's bears the burden of establishing which of those damages are covered.

Smitty's argues that its settlement agreement with National Union "resolves any alleged damage incurred before the Nationwide Policies went into effect on April 30, 2014, and the remaining balance reflects the settlement of alleged 'property damage' incurred during the Nationwide Policies." (Doc. #163, p. 4.) Further, Smitty's argues this issue is irrelevant because

---

[8] As the Court finds the property damages sustained here constitute multiple occurrences, the Court need not address Smitty's estoppel and waiver arguments on this point. Regardless, the Court finds the outcome would be the same.

"the entire balance of" the Settlement Agreement "may easily spread across the four years of the policy periods . . . when Nationwide had total aggregate policy limits on the primary and umbrella policies of $4,000,000 *per policy year*." (Doc. #143, p. 27.)

There are genuine questions of material fact that preclude summary judgment on whether the Automatic Relief and Damage Funds are covered by the Policies. Although the parties both acknowledge that at least some funds distributed pursuant to the Automatic Relief Fund, Plaintiffs cannot show what percentage of funds falls within the policy period. *See* (Doc. #136, p. 4) ("Smitty's is currently unable to advise the Court which validated claims under Part A may have involved equipment exposed to the 303 THF Product prior to April 30, 2014"). As to the Damage Fund, Smitty's has produced evidence that "[o]n a percentage basis, approximately 81.36% of the $819,894 paid under Part B" was paid during the policy period. (Doc. #163, p. 5.) However, Smitty's acknowledges that some of the Damage Fund "claims are vague regarding the dates of alleged repairs." (Doc. #163, p. 5.)

Because there is no dispute that *some* of the Automatic Relief Fund is covered, but is a dispute as to the extent of coverage, a grant summary judgment on this issue is inappropriate. Accordingly, the parties shall submit briefs on whether the amount of damages occurring during the policy period is a question of fact that should be determined by this Court or a question of law that should be determined on remand.

e)     **Prior Knowledge**

The parties dispute whether Smitty's was aware that the THF Products caused property damage during the policy period, which bears on whether the Settlement Agreement is covered. Smitty's argues that coverage exists because it did not know of the property damage sustained by the *Hornbeck* Plaintiffs prior to the inception of the policy. Nationwide disagrees, arguing

18

Smitty's was aware of issues with the THF Products before the Policies began on April 30, 2014.[9]

The Policies do not cover "property damage" if Smitty's, or any authorized employee, knew the damage "had occurred, in whole or in part" prior to April 30, 2014. (Doc. #138-1, p. 16.) Smitty's contends that it had no prior knowledge of "property damage" within the meaning of the Policies prior to the inception of the Policies. (Doc. #134, p. 28.)

Smitty's has satisfied its burden by putting forth evidence that it had no prior knowledge that the THF Products damaged consumer's equipment. Smitty's employee and current President Chad Tate testified that he does not remember whether any customer claims were made regarding the THF Products before the filing of the *Hornbeck* lawsuit in May 2018: "I can confidently say since I've been . . . involved in Smitty's that there has been no claim against this particular product that caused damage or caused harm to any equipment." (Doc. #134-3, p. 3.) Tiffany Cressionnie, a Smitty's employee from 2012–2022, testified that she did not remember any claims relating to the THF Products causing damage to equipment. (Doc. #134-4.)

Nationwide argues that there is a genuine dispute of material fact. Nationwide points to a suit filed against Smitty's on April 1, 2013, which alleges that Smitty's THF Products damaged equipment. *Heisler v. Smitty's Supply, Inc. et al*, Case 6:13-cv-00186-KDL (E.D. Tex. 2013). Smitty's argues that "Nationwide's reference to . . . [the *Heisler* action] is misplaced" because

---

[9] Nationwide also argues that the known loss doctrine bars coverage for the same reason. The known loss doctrine, or fortuity doctrine, has its origins in Texas common law. *See Looney Ricks Kiss Architects, Inc. v. Bryan*, No. CIV.A. 07-0572, 2014 WL 931781, *4 (W.D. La. Mar. 10, 2014) ("'[W]hile Louisiana does not apply the 'known loss' doctrine *per se*,' this Court is unwilling to make the *Erie* guess that the Louisiana Supreme Court would adopt the Texas common law fortuity doctrine."). The Court finds that a determination of whether it is appropriate to apply the known loss doctrine is unnecessary because the Policies specifically exclude coverage under the same circumstances. *See RLI Ins. Co. v. Maxxon Sw. Inc.*, 108 F.App'x 194, 198 (5th Cir. 2004) (holding the known loss doctrine precludes insurance coverage "where the insured is or should be aware of an ongoing progressive or known loss at the time the policy is purchased"). Thus, under either theory, the outcome would be the same.

19

the THF at issue was not manufactured by Smitty's, and instead manufactured by co-defendant Atwoods Ranch and Home. (Doc. #153, pp. 51–52.) The *Heisler* action was successfully mediated by the parties on April 11, 2012. (*Heisler*, Case 6:13-cv-00186-KDL, Doc. #57.) In that case, Smitty's had produced expert testimony that there was no proof the THF fluid at issue was manufactured by Smitty's. (*Heisler*, Case 6:13-cv-00186-KDL, Doc. #55-3, p. 36.) Further, expert testimony also showed that Smitty's THF Products "tested out good." (*Heisler*, Case 6:13-cv-00186-KDL, Doc. #55-3, p. 44.) For these reasons, the Court finds that the *Heisler* action does not present a genuine dispute of material fact as to whether Smitty's had prior knowledge.

Finally, Nationwide argues that there is a dispute of material fact as to whether Smitty's had prior knowledge because "Tate and Cressionie are not Smitty's, and their individual knowledge does not equate to establish Smitty's knowledge."[10] (Doc. #161, p. 43) (emphasis omitted). In support of this argument, Nationwide cites a single unreported case from the District of Kansas with no explanation. *See Williams v. Sprint/United Mgmt. Co.*, No. CIVA032200JWLDJW, 2006 WL 334643 (D. Kan. Feb. 8, 2006) (noting that "a Rule 30(b)(6) is not the deposition of a person but rather of an entity").

The terms of the Policies cut against Nationwide's argument. The Policies require that no "insured" knew of the property damage prior to the policy period. (Doc. #138-1, p. 16.) The Policies include as "insureds" Smitty's executives and employees "authorized by [Smitty's] to give or receive notice of an 'occurrence' or claim." (Doc. #138-1, pp. 16, 25.) Tate, an executive, and Cressionie, a claims handler, were privy to consumer complaints lodged with

---

[10] Nationwide produced evidence of emails between Smitty's Vice President of Sales and Marketing and a Smitty's marketing employee stating that "There is no additives in it really. It is totally line wash in a bucket ha." (Doc. #155-20, p. 5.) The Court does not find that this creates a genuine dispute of material fact as it does not show Smitty's knowledge of property damages caused by the THF Products.

Smitty's. Smitty's produced testimony from both Tate and Cressionie, that no complaints were filed regarding property damage caused by the THF Products. Because the Court finds that Nationwide has not presented any genuine disputes of material fact as to whether Smitty's had prior knowledge within the meaning of the Policies, the Court finds that summary judgment is warranted in favor of Smitty's.

### f)      Failure to Allocate Damages

Nationwide argues that there are genuine issues of material fact as to whether the Settlement Agreement is covered because "the *Hornbeck* Settlement does not identify which sums are allocated to each of the causes of action."[11] (Doc. #136, p. 19.) Smitty's disagrees, arguing "the Court does not need to delve into an analysis of the exposure under the MMPA claim, the warranty claims, and misrepresentation claims, since the ultimate gross settlement of $1,700,000 was a reasonable sum and good result in light of the exposure to Smitty's for the Negligence claim alone." (Doc. #153, p. 37.)

"An 'insurer should have to reimburse the insured only to the extent that the settlement compromised claims that were covered by the policy.'" *Fed. Ins. Co. v. New Hampshire Ins. Co.*, 439 F. App'x 287, 291 (5th Cir. 2011) (applying Louisiana law) (citing ALLAN D. WINDT, 2 INSURANCE CLAIMS AND DISPUTES § 6:31 (5th ed.2009)). "[T]he labeling of each component of the settlement does not change the reason for the agreement[.]" *Id.* (holding that a settlement characterized in part as compensating for breach of contract was, in reality, solely extinguishing bodily injury claims because the insured "did not have a breach of contract claim against" the defendant).

---

[11] Nationwide cites various cases applying Texas law in support of this contention.

21

Nationwide largely relies on non-binding legal authority, or Texas law, in support of its claim that Smitty's was required to allocate the settlement funds to each cause of action asserted in the *Hornbeck* action. *See Great Am. Ins. Co. v. Employers Mutual Casualty Co.*, 18 F.4th 486, 492 (5th Cir. 2021) ("In Texas . . . . [t]he coverage-seeking party carries the allocation burden, and a failure to allocate covered and non-covered damages is fatal to recovery."). However, the Court declines to impose Texas law, which is more restrictive than Louisiana law, in this instance.

Nationwide relies on one Fifth Circuit case applying Louisiana law, *Gulf Fleet Marine Operations, Inc. v. Wartsila Power, Inc.*, 797 F.2d 257 (5th Cir. 1986). In *Gulf Fleet*, the insured settled an underlying suit "for both covered and non-covered claims to 44 cents on the dollar." 797 F.2d at 260. The *Gulf Fleet* settlement agreement "did not specify the amount paid for each element of damage in the settlement figure" so a "44% reduction applied across the board to each of the original claims." *Id.* The court found this 44% reduction proper so that the insured only was indemnified for "the amount [it] actually paid in settlement[.]" *Id.*

*Gulf Fleet* is distinguishable. Unlike *Gulf Fleet*, the Settlement Funds does not involve non-covered claims. The parties did not distinguish between covered and non-covered to claim prior to and in executing the Settlement Agreement. Further, and most importantly, Smitty's is not seeking indemnification beyond the amount it is obligated to pay by the Settlement Agreement. Even if *Gulf Fleet* was applicable here, Nationwide fails to explain how it would affect coverage here. For these reasons, the Court finds Nationwide's argument unpersuasive.

### g)  Admission of No Coverage

Nationwide argues that Smitty's admitted the Settlement Agreement is not covered in Smitty's First Amended Answer to Nationwide's Third Amended Complaint. (Doc. #136, pp. 16–17.) Smitty's disagrees, arguing the accidental admission is moot.

22

Nationwide, in its Third Amended Complaint, stated "Nationwide owes no obligation to indemnify Smitty's for the *Hornbeck* Settlement[.]" (Doc. #77, ¶ 102.) In its First Amended Answer, Smitty's responded that "Defendant admits the allegations in paragraph 102[.]" (Doc. #101, ¶ 102.) On October 25, 2022, Smitty's filed a motion to amend paragraph 102 of its First Amended Answer, arguing that it was a "clear typographical error" and that "[t]his entire coverage case is based on the parties' dispute as to whether the settlement . . . is covered under the [Policies.]" (Doc. #143, p. 4.) The Court agreed, and entered an Order allowing Smitty's to file a Second Amended Answer. (Doc. #150.)

"Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions." *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983) (citing 3 MOORE'S FEDERAL PRACTICE & PROCEDURE ¶ 15.08[7] at 15–128 (1982)). Where "admissions can no longer be considered conclusive, they do still operate as adverse evidentiary admissions properly before the district court in its resolution of the factual issue." *Id.* (citing *Frederic P. Wiedersum Assoc. v. Nat'l Homes Constr. Corp.*, 540 F.2d 62, 65 (2nd Cir. 1976)).

Here, even if Smitty's non-conclusive admission has evidentiary value, there is no genuine dispute of material fact as to whether Smitty's disputes coverage of the Settlement Agreement. The voluminous record makes clear that Smitty's disputes coverage. Nationwide points to no fact indicating that paragraph 102 was anything but a typographical error. For this reason, Nationwide's argument is rejected.

In sum, the Court finds that Smitty's has satisfied its burden in showing, and Nationwide has failed to show otherwise, that the Settlement Funds are covered under the Policies in all but

one respect–Smitty's has failed to establish what percentage of damages compensated by the Automatic Relief and Damage Funds fall within the policy periods.

### 3. Coverage of Attorney's Fees and Expenses

Smitty's argues that the Policies cover attorney's fees and expenses because they "are indistinguishable from the covered property damage settlement proceeds." (Doc. #134, p. 33.) Nationwide disagrees, arguing that the Policies' Supplementary Payments provision does not provide coverage for attorney's fees and expenses. The Policies state Nationwide "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." (Doc. #138-1, p. 16.) The Supplementary Payments provision states:

> **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**
>
> 1. We will pay, with respect to any claim we investigate or settle, or any 'suit' against an insured we defend:
>
> . . .
>
> e. All court costs taxed against the insured in the 'suit'. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(Doc. #138-1, p. 23) (emphasis in original). The *Hornbeck* Settlement Agreement allocated $661,500 to attorney's fees and expenses.

First, the Court finds that attorney's fees and expenses are included as "sums that the insured becomes legally obligated to pay as damages" pursuant to the Settlement Agreement. (Doc. #138-1, p. 16.) There is a "general rule that an indemnity agreement . . . normally contemplates that the indemnitee . . . is entitled to recover from the indemnitor . . . attorney fees as part of the damages." *Barton Protective Servs., Inc. v. Coverx Corp.*, 615 So. 2d 438, 441 (La. App. 1993) (finding attorney's fees included in "all sums which the insured . . . shall become legally obligated to pay as damages because of bodily injury"); *see Kinsinger v. Taco*

*Tico, Inc.*, 861 So. 2d 669, 673 (La. App. 2003) (holding that an indemnification agreement can include attorney's fees "implied by reference" if the language is "sufficient in infer the obligation").

The Court finds that attorney's fees and expenses are covered. The Policies contain broad language that requires Nationwide to pay "sums that the insured becomes legally obligated to pay as damages." (Doc. #138-1, p. 16.) A sum is "[a] quantity of money." *Sum*, BLACK'S LAW DICTIONARY (11th ed. 2019). Similarly, damages are "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury[.]" *Damages*, BLACK'S LAW DICTIONARY (11th ed. 2019). Attorney's fees and expenses are quantities of money that Smitty's is obligated to pay the *Hornbeck* Plaintiffs to compensate for their injuries pursuant to the Settlement Agreement. Construing the policy to effect coverage and in accord with Louisiana law, the Court finds that attorney's fees and expenses are covered.

Further, construing the Policies in favor of Smitty's, the Court finds that the Supplementary Payment provision does not exclude coverage of attorney's fees and expenses. The Policies exclude from coverage any "attorneys' fees or attorneys' expenses taxed against the insured" in a "suit." (Doc. #138-1, p. 23.) Even if a settlement agreement is considered a "suit" within the meaning of the Policies, the Court finds that the attorney's fees and expenses at issue were not "taxed" against Smitty's. To tax is commonly defined as "to assess or determine judicially the amount of (costs in a court action)." MERRIAM-WEBSTER, *Tax* (October 4, 2022), https://www.merriam-webster.com/dictionary/tax. Here, attorney's fees and expenses were not determined judicially or otherwise imposed on Smitty's. Smitty's, without Nationwide's objection, entered into the Settlement Agreement and consented to the attorney's fees and expenses as part of an overall award. Considering the circumstances and interpreting the

Policies' language in favor of Smitty's, the Supplementary Payments provision is inapplicable. Therefore, the Court finds that the attorney's fees, to the extent they are allocated to property damage that occurred within the Policy Period, are covered by the Policies.[12]

### 4. Coverage of Incentive Awards

The *Hornbeck* Settlement Agreement provided incentive awards of $5,000 to each of the four class representatives, totaling $20,000. Smitty's argues that the incentive awards are covered under the Policies because the awards "were simply a portion of the gross settlement allocated to the Class Representatives, who also asserted 'property damage' claims and released Smitty's." (Doc. #143, p. 35.) Nationwide argues that it is not obligated to indemnify the incentive awards because "[t]here is no language in the subject policies that covers such awards." (Doc. #136, p. 26.)

As discussed above, the Policies require Nationwide to pay all "sums that the insured becomes legally obligated to pay as damages" pursuant to the Settlement Agreement. (Doc. #138-1, p. 16); *Fed. Ins. Co.*, 439 F. App'x at 291. Interpreting the Policies in favor of Smitty's, the incentive awards are a sum that Smitty's is legally obligated to pay the *Hornbeck* Plaintiffs, as set out in the Settlement Agreement, to compensate for property damages. Therefore, the Court finds that the incentive awards provided in the Settlement Agreement, in the amount of $20,000, are covered by the Policies.[13]

### 5. Policy Exclusions

"An insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to provide coverage." *Stewart Interior Contractors*, 969 So. 2d at 658.

---

[12] Because the Court finds that the Policies cover attorney's fees, the Court need not address Smitty's estoppel and waiver arguments on this point. Regardless, the Court finds the outcome would be the same.

[13] The parties agree that administrative expenses related to the Settlement Agreement are not at issue here. Further, because the Court finds that the Policies cover incentive awards, the Court need not address Smitty's estoppel and waiver arguments on this point. Regardless, the Court finds the outcome would be the same.

Nationwide argues that three exclusions contained in the Policies bar coverage in this case. Smitty's disagrees. Each disputed exclusion is addressed separately below.

### a) "Expected or Intended Injury"

Nationwide argues this exclusion bars coverage. Smitty's argues that this exclusion does not apply because the only claim released by the *Hornbeck* Settlement agreement seeking damage for property damage was the negligence claim.

The Policies exclude from coverage "'property damage' expected or intended from the standpoint of the insured." (Doc. #138-1, p. 17.) Louisiana courts view this exclusion as excluding intentional injuries:

> The purpose of the intentional injury exclusion is to restrict liability insurance coverage by denying coverage to an insured in circumstances where the insured acts deliberately and intends or expects . . . injury to another. The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for damages.

*Breland v. Schilling*, 550 So. 2d 609, 601 (La. 1989) (internal quotations and citations omitted). "'The subjective intent of the insured, as well as his reasonable expectations as to the scope of his insurance coverage, will determine whether an act is intentional. An act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur.'" *Pender v. Elmore*, 855 So. 2d 930, 936 (La. App. 2003) (quoting *Yount*, 267 So. 2d at 152). "If an insured knows and expects that damage will occur, but nevertheless acts, the expected incident is excluded under an insurance policy's 'expected or intended injury' exclusion." *Jotun Paints*, 555 F.Supp.2d at 699 (quoting *Cole-Gill v. Moore*, 862 So. 2d 1197, 1205–06 (La. App. 2003)).

Here, Nationwide does not satisfy its burden of showing the exclusion applies. Nationwide presents no evidence that Smitty's expected its THF Products to damage consumer's equipment. Even if the allegations of the *Hornbeck* complaint were enough to satisfy

27

Nationwide's burden, nothing in the *Hornbeck* complaint alleges that Smitty's intended its THF Products to damage consumer's equipment. The *Hornbeck* Plaintiffs did allege that Smitty's intentionally misrepresented the quality of its THF Products, but did not allege that Smitty's misrepresented the quality with the intent of damaging their equipment. *See, e.g.* (Doc. #138-14, p. 21) ("Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the label."). Nationwide has not shown that Smitty's desired to damage or believed that damage to equipment was substantially certain to occur. Construing the Policies in Smitty's favor, the Court finds that the Expected or Intended Injury exclusion does not apply.

### b) "Damage to Your Product"

Nationwide argues the "Damage to Your Product" exclusion bars the coverage of Settlement Agreement funds that compensate for the cost of repairing or replacing the THF Products. Smitty's argues the exclusion does not apply because "there is nothing in the Settlement Agreement or orders approving the settlement to indicate that any portion of the Settlement Fund was to recall or replace Smitty's product." (Doc. #153, p. 40.)

The Policies exclude from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it." (Doc. #138-1, p. 20.) The Policies define "your product" as:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

    (a) You;

    (b) Others trading under your name; or

    (c) A person or organization whose business or assets you acquired; and

(2) [c]ontainers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

(Doc. #138-1, p. 31.)

Here, the Court finds this exclusion is inapplicable to the facts.  As discussed above, the

Settlement Agreement compensates for property damage done to the *Hornbeck* Plaintiffs'

equipment.  *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 403

(5th Cir. 2008) (holding that a "Your Product" exclusion does not apply where there were no

"complain[ts] of damage" to the insured's product, but to the insured's property).  Construing the

exclusion in favor of Smitty's, it does not apply.

### c) "Recall of Products, Work or Impaired Property"

Nationwide argues that, "[t]o the extent the evidence shows damages arising out of, or

solely incidental to, the removal and/or repair of the 303 THF, the Policies clearly exclude

coverage for these damages under the 'impaired property' exclusion."  (Doc. #155, p. 48.)

Smitty's disagrees, arguing that the Settlement Agreement was used to compensate for property

damage incurred by the *Hornbeck* Plaintiffs.

The Policies exclude from coverage:

> Damages claimed for any loss, cost or expense incurred by you or others for the
> loss of use, withdrawal, recall, inspection, repair, replacement, adjustment,
> removal or disposal of:
>
> (1) 'Your product';
>
> (2) 'Your work'; or
>
> (3) 'Impaired property';
>
> if such product, work, or property is withdrawn or recalled from the market or
> from use by any person or organization because of a known or suspected defect,
> deficiency, inadequacy or dangerous condition in it.

(Doc. #138-1, p. 20.)

Here, the Court finds the exclusion is inapplicable.  "This exclusion has been taken to

mean simply that the insurer is not liable for the cost of preventative or curative action taken by

its insured in connection with the recall of products discovered to have a common fault."

*Champion v. Panel Era Mfg. Co.*, 410 So. 2d 1230, 1238 (La. App. 1982) (citation omitted); *see*

*also City of Plaquemine v. North Am. Constructors, Inc.*, 683, So. 2d 386, 389 (La. App. 1996).

Here, there are no facts to support Nationwide's contention that the Settlement Agreement is equivalent to the cost of a recall of the THF Products. Neither party argues that the THF Products were recalled. Further, even if there was such a recall, the Settlement Agreement compensates the *Hornbeck* Plaintiffs for property damage associated with the THF Products. Nothing in the record indicates that the Settlement Agreement's funds involve a recall. Construing the exclusion in favor of Smitty's, it does not apply.

### B.    Smitty's Counterclaim Count I, Breach of Contract

Both parties move for summary judgment on Smitty's counterclaim Count I, alleging breach of contract. Smitty's argues that Nationwide breached the Policies as a matter of law because it "failed to make payment for 'property damage' that Smitty's was legally obligated to pay under the Settlement Agreement." (Doc. #134, p. 46.) Nationwide disagrees, arguing that it did not breach the Policies as a matter of law because the Settlement Agreement is not covered.

"In Louisiana, a breach-of-contract claim has three 'essential' elements: '(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the oblige.'" *IberiaBank v. Broussard*, 907 F.3d 826, 836 (5th Cir. 2018) (quoting *Favrot v. Favrot*, 68 So. 3d 1099, 1108–09 (La. App. 2011)). "To state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision." *Whitney Bank v. SMI Cos. Glob., Inc.*, 949 F.3d 196, 205 (5th Cir. 2020) (quoting *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002)).

The Court finds, as discussed above, that Smitty's has shown all elements necessary to warrant summary judgment on its counterclaim Count I, with the caveat that Smitty's must still establish the extent of coverage within the policy period. It is undisputed that Nationwide

contracted with Smitty's, agreeing to indemnify Smitty's in accordance with the Policies. The Court found that the Settlement Agreement is covered by the Policies such that Nationwide is obligated to indemnify Smitty's. The only issue remaining is how much Nationwide is obligated to pay Smitty's. Based on the Court's findings discussed above, Smitty's is entitled to summary judgment on its counterclaim Count I.

### C. Smitty's Counterclaims Count II and III

Nationwide moves for summary judgment on Smitty's counterclaim Count II, alleging common law bad faith, and Count III, alleging statutory bad faith. Both counterclaim Counts assert claims under Missouri and Louisiana law.

As a threshold matter, the parties that "Louisiana does not recognize a common law action for bad faith for an insurer's breach of an insurance contract." (Doc. #136, p. 30.) Smitty's "asserts the alternative claim in Count III" pursuant to La. Stat. Ann. §§ 22:1973(a), (c) and § 22:1892. (Doc. #153, p. 68.) Therefore, summary judgment is warranted in favor of Nationwide on Count II to the extent it seeks recovery under Louisiana common law.

The parties dispute whether Louisiana or Missouri law applies to Smitty's tort claims. As discussed above, this Court will apply Louisiana's applicable choice of law rule, which here is La. Civ. Code Ann. art. 3537. *See NOLA Ventures, LLC v. Upshaw Ins. Agency, Inc.*, 932 F.Supp.2d 743, 753 (E.D. La. 2013). Pursuant to Article 3537, the Court should apply the law of the state involved that bears the closer relationship to the parties and the dispute. Nationwide contends that Louisiana law applies, and Smitty's argues that Missouri law applies.

Both Louisiana and Missouri bear close relationships to the parties and the instant action. Smitty's is a Louisiana corporation with its principal place of business in Louisiana. The Policies at issue here were issued in Louisiana. The *Hornbeck* action was filed, litigated, and settled in Missouri. All conduct related to Smitty's bad faith claims, or the negotiation and

execution of the Settlement Agreement, took place in Missouri. However, the Court finds it need not determine which state bears the closer relationship because, regardless of the law applied, genuine disputes of material fact preclude summary judgment.

Both Louisiana and Missouri law provide that a party may recover for a bad faith or vexatious refusal to pay under an insurance contract. *See* La. Stat. Ann. § 22:1973; *see also* Mo. Rev. Stat. § 375.296; *see also Blount v. Nationwide Agribusiness Ins. Co.*, 413 F.Supp.3d 933, 937–938 (W.D. Mo. 2019). However, both states requires that the refusal to pay must be unreasonable. *See Levy Gardens Partners 2007, L.P. v. Commonwealth Land Tit. Ins. Co.*, 706 F.3d 622, 635 (5th Cir. 2013) (stating that there is no bad faith claim where the refusal to pay was based on a "good-faith defense"); *see also Ganaway v. Shelter Mut. Ins. Co.*, 795 S.W.2d 554, 561–63 (Mo. App. S.D. 1990) (stating there is no bad faith claim where there were "fairly debatable" claims of coverage). Further, under both states' laws, questions of bad faith should be rarely disposed of on summary judgment. *See Merwin v. Spears*, 90 So.3d 1041, 1042 (La. 2012) (quoting *Penalber v. Blount*, 550 So.2d 577, 583 (La. 1989)) ("The Louisiana Supreme Court explained that "summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge or good faith[.]'"); *see also Ganaway*, 795 S.W.2d at 561–63 (citing *Zumwalt v. Utilities Ins. Co.*, 360 Mo. 362, 370 (Mo. 1950)).

Here, Smitty's has presented evidence giving rise to a genuine dispute of material fact, precluding summary judgment. Smitty's has presented evidence that Nationwide was extensively involved in the drafting of, and did not object to the execution of, the Settlement Agreement. The parties do not dispute that Nationwide provided Smitty's legal representation in the negotiation of the Settlement Agreement. Additionally, Smitty's has presented evidence that Nationwide raised additional coverage objections for the first time after the Settlement

Agreement had been executed. *Lafauci v. Jenkins*, 844 So.2d 19, 29 (La. App. 2003) (holding an insurer "may still be found to be in bad faith for failure to keep its insured informed of the status of settlement negotiations and other developments affecting his excess exposure"); *Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 93 (Mo. App. W.D. 2005) ("Inherent in a policy of insurance is the insurer's obligation to act in good faith regarding the settlement of a claim.").

A review of the record shows that Smitty's has created a genuine dispute of material fact as to whether Nationwide approved the Settlement Agreement and then denied coverage of that Settlement Agreement in bad faith. Therefore, the Court finds that summary judgment is not warranted on either Count II, to the extent it seeks recovery under Missouri law, or Count III.

## IV.    CONCLUSION

For the reasons stated above, Nationwide's Motion for Summary Judgment (Doc. #135) and Smitty's Motion for Partial Summary Judgment (Doc. #133) are GRANTED IN PART and DENIED IN PART as follows:

- Nationwide's Motion for Summary Judgment is GRANTED as to Smitty's counterclaim Count II and DENIED as to its declaratory judgment claim and Smitty's counterclaim Counts I and III.

- Smitty's Motion for Summary Judgment is GRANTED as to Nationwide's declaratory judgment claim and its counterclaim Count I, with the issue remaining of the amount of damages and attorney's fees covered under the Policy Period.

It is FURTHER ORDERED that the Parties shall submit briefs on or before January 6, 2022 discussing whether the amount of damages occurring during the policy period is a question of fact that should be determined by this Court or a question of law that should be determined on remand.

33

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: December 14, 2022